**SO ORDERED.**

**SIGNED this 09 day of March, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| GEORGE WHITFIELD NEWKIRK, | CHAPTER 11 |
| RACHEL WALKER NEWKIRK, | CASE NO.  11-05896-8-RDD |
| DEBTORS | |

ORDER DENYING CONFIRMATION OF
CHAPTER 11 PLAN OF REORGANIZATION

Pending before the Court is the Chapter 11 Plan of Reorganization (the "Plan") and the Disclosure Statement filed by George Whitfield Newkirk and Rachel Walker Newkirk (the "Debtors") on October 31, 2011 and the objections to confirmation of the Plan and Disclosure Statement filed by the United States Bankruptcy Administrator, the North Carolina Agricultural Finance Authority ("NCAFA"), and PSB Credit Services ("PSB").  The Court conducted a hearing on the Plan and Disclosure Statement on February 15, 2012 in Wilson, North Carolina.

**BACKGROUND**

On August 2, 2011 the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  The Debtors are individuals residing in Duplin County, North Carolina.  Mr. Newkirk, the male debtor, was formerly employed by Coastal

Plains Pork, LLC as Vice President for Production.  The Debtors were also contract hog growers for Coastal Plains Pork, LLC.  Coastal Plains Pork, LLC filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 28, 2009 and subsequently converted its case to a Chapter 7 liquidation.  The downfall of Coastal Plains Pork, LLC substantially harmed the Debtors' financial condition.  Mr. Newkirk lost employment with Coastal Plains Pork, LLC and shut down operation of the hog farm.

Mr. Newkirk owns and operates Coastal Plains Milling, LLC ("CPM").  For several years, CPM operated a feed mill that was leased by Coastal Plains Pork, LLC.  The feed mill was eventually sold to Coastal Plains Pork, LLC.  After the sale of the feed mill, Mr. Newkirk continued to operate a farm production consulting business out of CPM from 2005 until his contract with Coastal Plains Pork, LLC ended in approximately 2009.  In 2010, Newkirk Farms, Inc., another entity held by the Debtors, transferred approximately 100 head of cattle and various farm equipment to CPM.[1]  In 2010, Mr. Newkirk began operating his consulting business through CPM once again.  Mr. Newkirk independently contracts as a consultant to a local farm where he works three to four days a week and earns $385.00 per day.  This income is paid to CPM and is generally used to pay its debts.  Mr. Newkirk provides consulting services through CPM in order to generate a stream of income for the cattle operation.  The purpose of the cattle operation is to make Debtors' property productive without resorting to less desirable uses, such as chicken or turkey houses.  The Debtors' ultimate desire is to hold onto their land, which has been passed down through their family for centuries.

---

[1] The transfer was made in exchange for credit on the debt owed to CPM for payment of liabilities incurred by Newkirk Farms, Inc.  The Debtors value the cattle and equipment at approximately $130,450.00.  After the transfer, Newkirk Farms, Inc. held no assets.

The Debtors own multiple tracts of land totaling approximately 442.92 acres in Duplin and Sampson Counties. Of this property, 378.53 acres are subject to a first deed of trust in favor of PSB that secures a promissory note in the amount of $1,058,726.56. The remaining 64.39 acres are subject to a first deed of trust in favor of PSB that secures a second promissory note in the amount of $396,716.97. The 442.92 acres are also subject to a second deed of trust in favor of NCAFA securing a promissory note in the amount of $797,221.76. PSB also holds a security interest in all livestock, equipment, machinery, and accounts belonging to the Debtors and Newkirk Farms, Inc. The Debtors defaulted on their obligations to PSB. The Debtors filed the bankruptcy petition because of foreclosure proceedings initiated by PSB.

The Plan provides that the Debtors will treat PSB's claims in Class 9 as a fully secured obligation in the amount of $597,900.00 and an unsecured claim in the amount of $460,826.56. The fully secured portion of the claim will be amortized over twenty years with interest accruing at a rate of prime plus 1% with a final balloon payment due after ten years. The Plan also provides that the Debtors consent to PSB's foreclosure on 64.39 acres on Wallace Highway as well as additional property owned by Newkirk Farms, Inc. securing a $396,716.97 promissory note held by PSB. Upon completion of the foreclosure sale, PSB shall credit the Debtors' account in the amount of at least $303,780.00 and shall have 180 days to file a proof of claim for any deficiency. Finally, the Plan provides that Class 8, comprised of the claim of NCAFA, will be treated as an unsecured claim along with the general unsecured claims in Class 11.

At the hearing, the parties agreed to value the property securing the first promissory note to PSB at approximately $661,000.00. The Debtors' amended treatment of PSB by proposing to sell two tracts of land, 30.59 acres and 25.436 acres, subject to the first deed of trust of PSB and second

deed of trust of NCAFA, for the appraised value of $179,000.00 pursuant to an offer the Debtors received on February 14, 2012. The Debtors intend to retain 322.5 acres subject to the first deed of trust in favor of PSB.

The Bankruptcy Administrator, NCAFA, and PSB all objected to the Plan and Disclosure Statement on the basis that the Disclosure Statement provides insufficient information for creditors to determine the source of income to fund the Debtor's Plan and determine if the Plan is feasible. The Disclosure Statement provides the Debtors will fund the plan through "income earned though future farming operations, wages earned, and the sale of certain real and personal property." The Disclosure Statement does not provide any specific information as to future farming operations and wages to be earned.

Mr. Newkirk testified that in order to fund the Plan, CPM will begin paying $2,500.00 in rent each month to the Debtors for the cattle operation's use of the property. Other than the rental payments from CPM, Mr. Newkirk would not personally receive any other income. The Debtors also intend to fund the Plan with the approximately $9,455.00 each month Mrs. Newkirk earns through employment at Purdue Pharma, L.P. The Debtors introduced projections of income and expenses at the hearing. The projections indicate that for the first year of the Plan, the Debtors will have a disposable income of at least -($47.00) each month. CPM receives at least $4,620.00 in income each month from Mr. Newkirk's consulting services and the Debtors propose that CPM will pay $2,500.00 each month in rent, leaving CPM holding almost $2,000.00 each month.[2]

---

[2] Mr. Newkirk testified that he earned $385.00 per day as a consultant employed by CPM and worked three to four days a week. At a minimum, working only three days a week, Mr. Newkirk would earn $4,620.00 in a month.

After solicitation of votes, only four out of eleven classes voted on the Plan. All four classes that voted accepted the Plan. However, three of those classes were unimpaired under the Plan. Neither PSB nor NCAFA cast a ballot. At the hearing, NCAFA stated it accepted the Plan based on an agreement struck with the Debtors, whereby Class 11 would receive a junior lien on the Debtors' residence securing a $110,000.00 payment to the unsecured class.

## DISCUSSION

The primary objection to the confirmation of the Debtors' Plan is that the Disclosure Statement fails to provide adequate information regarding the Debtors' financial condition and their ability to perform obligations under the Plan. For a bankruptcy court to confirm a plan, the plan must comply with all applicable provisions of title 11. 11 U.S.C. § 1129(a)(1). In order to solicit acceptance of a plan, a debtor is required to provide a disclosure statement approved by the court that contains adequate information. 11 U.S.C. § 1125(b); *In re Forest Grove, LLC*, 448 B.R. 729, 733 (Bankr. D.S.C. 2011).

Section 1125(a)(1) defines adequate information as:

[I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor; any successor to the debtor; and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1). In determining the adequacy of information under § 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. *In re Radco Prop., Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) (citing *In re A.H. Robins, Co.*, 880 F.2d 694 (4th Cir. 1989).

This Court has held that a disclosure statement should "provide the creditors with an accurate basis for determining their position and their ability to make an informed decision with regard to the acceptance or rejection of the [p]lan." *In re Hendrix-Barnhill Co., Inc.*, No. 11-01974-8-RDD 2011 WL 5902740 at *3 (Bankr. E.D.N.C. Oct. 27, 2011). In this case, the Court finds the Disclosure Statement is deficient in adequate information as to the Debtors' ability to fund and maintain the Plan necessary for the creditors to make an informed decision.

The Disclosure Statement provides the Debtors will "make payments under the Plan from income earned through continued operations." Disclosure Statement at 3, *In re Newkirk*, No. 11-05896-8-RDD (Bankr. E.D.N.C. Oct. 31, 2011). The Disclosure Statement does not provide information as to the Debtors' "continued operations." The Disclosure Statement does not describe the Debtors' financial history, previous income from operations, or projections of future income.[3] Nor does the Disclosure Statement provide insight into the Debtors' books and records. Without this information, a creditor, much less a hypothetical investor, would not have sufficient information to make an informed judgment concerning the Plan.

It appears to the Court that the key to the Debtors' ability to make payments under the Plan is the success of CPM. At the hearing, Mr. Newkirk stated, CPM will begin making rental payments of

---

[3]The Debtors provided projections of their expected income and expenses at the hearing. Based on the projections, the Debtors are left with a negative amount of disposable income each month for the first year of the Plan. The projections were not served on the Debtors' creditors for consideration in voting on the Plan.

$2,500.00 to the Debtors each month, which the Debtors' monthly projections include in the calculation of income and expenses. However, despite the reliance on the payments from CPM, the only reference the Disclosure Statement makes to CPM is that the Debtors own a membership interest in the company. The Disclosure Statement lists the membership interest in CPM as personal property of Debtors, but assigns no value to it. Disclosure Statement at 19, *In re Newkirk*, No. 11-05896-8-RDD (Bankr. E.D.N.C. Oct. 31, 2011). The single reference to CPM is insufficient to provide information as to the company's role in the Debtors' reorganization. The Disclosure Statement fails to explain CPM's relation to the Debtors, the operation of the consulting business, the operation of the cattle business, or that Mr. Newkirk's earnings are paid to CPM, all of which are vital elements to the Plan. Mr. Newkirk's income from consulting under the CPM banner subsidizes the cattle farm, which does not appear to generate a profit without the consulting revenues. Full disclosure requires all financial aspects of the cattle farm to be disclosed.

The Court needs only to look to the Debtors' description of their history and business structure in the Disclosure Statement to determine the information provided is inadequate. The relevant paragraph states:

### III. HISTORY AND BUSINESS STRUCTURE

The Debtors filed a Chapter 11 petition on August 2, 2011. The Debtors are residents of Duplin County and were formerly engaged in the hog business. The male Debtor was formerly President of Coastal Plains Pork, LLC, which filed for Chapter 11 in 2009 and was subsequently converted to Chapter 7.[4] The Debtors filed this Chapter 11 proceeding because of a foreclosure initiated by PSB Credit Services.

---

[4] At the hearing, Mr. Newkirk stated this was incorrect. Mr. Newkirk was Vice President of Coastal Plains Pork, LLC, not President.

7

Disclosure Statement at 4, *In re Newkirk*, No. 11-05896-8-RDD (Bankr. E.D.N.C. Oct. 31, 2011) (footnote added). This one paragraph is all that a creditor or party in interest is provided to evaluate the Debtors' business operations as related to the likelihood for successful reorganization. There is no mention that Mr. Newkirk will continue to subsidize CPM and the cattle farm. Nor is it mentioned Mr. Newkirk's income will come from rental payments for use of land rather than his consulting services. Without this information, no creditor or party in interest could understand that the majority of Mr. Newkirk's income from consulting services will be used to fund the cattle farm instead of making payments to creditors. The Court finds any description lacking information so vital to be inadequate *per se*. As such, the Disclosure Statement does not provide adequate information within the meaning of § 1125(a)(1).

Furthermore, the Disclosure Statement fails to provide adequate information to unsecured creditors concerning the value of the property to be distributed to unsecured creditors under the Plan or Debtors' disposable income as required by 11 U.S.C. § 1129(a)(15). At the hearing, the Debtors proposed to distribute $110,000.00 to the unsecured class, which had claims totaling $559,658.13.[5] Since the value of the property to be distributed to the unsecured class is less than the total amount of the claims, the Debtors must show their disposable income is not greater than $110,000.00 to satisfy § 1129(a)(15)(B).[6] However, the Disclosure Statement contains no information regarding the Debtors'

---

[5]This amount does not include the undetermined deficiency claim of NCAFA's promissory note in the amount of $797,221.76 secured by a second deed of trust on the Debtors' real property.

[6]Section 1129(a)(15) requires that if an unsecured claim objects to the confirmation of the plan, the value of the property to be distributed under the plan on account of that claim must not be less than the amount of the claim or the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor over a five year period beginning on the date the first plan payment is made or the period the for which the plan provides

projected income or disposable income.  As such, the Court finds the Disclosure Statement lacks adequate information to allow an unsecured creditor to determine whether to lodge objection under § 1129(a)(15).

The Court finds the Disclosure Statement must include at the very minimum projections of the Debtors' income and expenses as well as a history of CPM and Newkirk Farms, Inc. and the Debtors' involvement with those companies.  The complexity of the case requires inclusion of this information because without knowledge of the Debtors' income or the arrangement with CPM, parties voting on the Plan cannot make an informed decision.  The benefit to the creditors or other parties in interest is substantial because it will allow them to evaluate the Plan based on full disclosure rather than vague statements such as "continued operations."  Finally, the cost of providing this information is minimal as Mr. Newkirk stated at the hearing he could provide information regarding CPM's financial situation if called upon.

Therefore, the Court finds the Disclosure Statement does not provide adequate information within the meaning of § 1125(a).  Accordingly, the Plan does not satisfy the requirements of § 1129. Therefore, confirmation of the Plan is **DENIED**.

    **SO ORDERED.**

                **END OF DOCUMENT**

---

payments, whichever is longer.  11 U.S.C. § 1129(a)(15).